UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

NUMERIC INVESTORS LLC,

        Plaintiff,

v.

RYAN H. SOWERS,

        Defendant.

04 12692 RCL

CIVIL ACTION No.

MAGISTRATE JUDGE _____

RECEIPT # _____
AMOUNT $ 150
SUMMONS ISSUED YES
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE 12/23/04

## VERIFIED COMPLAINT

Plaintiff Numeric Investors LLP ("Plaintiff") alleges as follows:

### JURISDICTION AND VENUE

1.     This is a civil action primarily seeking equitable and injunctive relief for violations of federal statutes, in particular the Computer Fraud and Abuse Act (18 U.S.C. § 1030), the Stored Communications Act (18 U.S.C. § 2701, *et seq.*), as well as for violations of the Massachusetts common law and statutes concerning the tortious misappropriation of trade secrets (M.G.L. ch. 93, §§ 42 and 42A) and breach of contract.

2.     This Court has jurisdiction over the subject matter of this Complaint under 28 U.S.C. § 1331, 18 U.S.C. § 1030 (Computer Fraud and Abuse Act) and 18 U.S.C. § 2701, *et seq.* (Stored Communications Act). This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

3.     Venue is proper in this District pursuant to 28 U.S.C. § 1391.

### GENERAL ALLEGATIONS

#### 1. Parties

4.     Numeric Investors LLC ("Numeric") is a Delaware limited liability company with its principal place of business located at One Memorial Drive Cambridge, Massachusetts.

5. Ryan H. Sowers ("Sowers") is an individual who resides, on information and belief, at 504 Beacon Street Boston, Massachusetts.

## 2. Background

### Numeric's Multi-Million Dollar Computer Databases, Simulations and Models.

6. Founded in 1989, Numeric manages portfolios of U.S. and foreign equities and has approximately $9.3 billion under management and generates annual revenues between $50 and $100 million. Numeric manages the n/i numeric investors family of funds, institutional portfolios, limited partnerships, and offshore funds.

7. The key to Numeric's portfolio management business is the development of highly confidential and proprietary computer databases of historical information about stocks and computer simulations and models that are used to analyze those databases and to use these tools to provide portfolio management advice. For instance, Numeric developed a software product called Time Series Viewer that allows Numeric's portfolio managers to analyze stock data and inputs of the different quantitative models utilized by Numeric. These confidential databases, simulations and models form the core of Numeric's business and all Company employees are required, as a condition of their employment, to sign confidentiality agreements that prevent any disclosure outside of Numeric, even to Numeric's clients, to ensure that these electronic files and trade secrets remain entirely confidential.

8. The transfer of Numeric's databases, simulations and models to a client or competitor would deal a catastrophic blow to Numeric's business. The expense of obtaining the historical data alone costs Numeric over $400,000 per year to obtain in raw form. Numeric then invests millions of dollars to update and develop these databases as well as design and implement quantitative models and computer software applications and spreadsheets that employ

those models. The disclosure of Numeric's confidential and proprietary databases, simulations, models, software and files would represent the loss of the primary engine of Numeric's business and tens or even hundreds of millions of dollars of development effort and future revenue.

### Sower's Duty of Confidentiality to Numeric.

9. On or around September 7, 1999, Numeric hired Sowers as a computer systems administrator. In January 2001, Sowers became a research analyst in Numeric's International Group, which was and is supervised by Robert E. Furdak. Sowers' responsibilities as a research analyst included, among other things, the development of confidential and proprietary databases, computer simulations and models of European and Japanese stocks based upon historical financial and other data that Numeric purchased from third-parties.

10. On November 30, 2000, as a condition of his employment, Sowers signed Numeric's Employment and Confidentiality Agreement ("2000 Agreement"), a true and correct copy of which is attached hereto as Exhibit A.

11. On or around June 16, 2004, as part of the change in corporate structure at Numeric and as a condition of his continuing employment, Sowers executed another of Numeric's Employment and Confidentiality Agreement (the "2004 Agreement"), a true and correct copy of which is attached hereto as Exhibit B.

12. The 2000 and 2004 Agreements signed by Sowers provide in paragraph 7, in relevant part:

> 7. Unauthorized Disclosure of Confidential Information:
>
> While employed by the Company and thereafter, I shall not, directly or indirectly, use any Confidential Information (as hereinafter defined) other than pursuant to my employment by and for the benefit of the Company, or disclose to anyone outside of the Company any such Confidential Information. The term

> "Confidential Information" as used throughout this Agreement
> shall mean all trade secrets, proprietary information and other data
> or information . . . .

Exhibit A, ¶ 7; Exhibit B, ¶ 7.

13. The 2000 and 2004 Agreements signed by Sowers specifically include within the meaning of "Confidential Materials" materials containing confidential and proprietary business information of Numeric, including, among other things, "any idea, improvement, index, trading program, database, . . . technical data, design, formula, device, pattern, concept, computer program, software, firmware, source code, object code, algorithm, subroutine, object module, . . . compilation of information, or work in process, or parts thereof" (Exhibit A, ¶ 8; Exhibit B, ¶ 8) and further expressly requires Sowers to return such materials after his employment ends:

> 12. <u>Return of Property</u>:
>
> If I cease to be employed by the Company, or at any other
> time upon request of the Company, I shall return promptly any
> computer programs, databases, specifications, drawings,
> blueprints, data storage devices, reproductions, sketches, notes,
> reports, proposals, business plans, or copies of them, other
> documents or materials, tools equipment, or other property
> belonging to the Company or its customers . . . . I understand,
> however, that my rights and obligations under this Agreement will
> continue even if I do not sign a Termination Certificate.

Exhibit A, ¶ 12; Exhibit B, ¶ 12.

14. The 2000 and 2004 Agreements make clear that Sowers agreed to assign all his rights to information, documents, files and computer programs to Numeric:

> [A]ll Confidential Information and all other discoveries . . .
> conceived, developed, reduced to practice or otherwise made by
> me, alone or jointly with others and in any way relating to the
> Company's present or proposed programs or services or customers
> or to tasks assigned to me during the course of my employment . . .
> shall be the sole property of the Company.

Exhibit A, ¶ 8; Exhibit B, ¶ 8.

15. The 2004 Agreement also makes clear that Numeric required employees to enter into the 2004 Agreement as a condition of employment and "in recognition of the fact that as an employee of the Company I will or may have access to confidential information of the Company." See Exhibit A; Exhibit B.

### The Termination of Sowers' Employment With Numeric.

16. On November 30, 2004, Numeric informed Sowers that Numeric would be terminating his employment with Numeric. Numeric and Sowers then entered into discussions on how best to transition development projects from Sowers to other Numeric employees, and agreed that Sowers would continue working for Numeric between November 30 and into December (the "Transition Period").

17. On or about December 10, 2004, as a condition of his continued employment with Numeric, Sowers executed a letter of understanding ("Letter Agreement"), a true and correct copy of which is attached hereto as Exhibit C. The Letter Agreement set forth four tasks that Sowers was obligated to perform during the Transition Period, but by the deadline of December 15, 2004, later extended by agreement to December 20, 2004. In exchange, Numeric agreed to pay Sowers compensation and bonus according to a schedule for his completion of these four tasks. These tasks involved the continued development and analysis of databases containing historical financial data and software that uses models of historical data to predict stock performance as well as detailed documentation of projects that Sowers worked on while at Numeric.

18. The Letter Agreement signed by Sowers provides in paragraph 3, in relevant part:

> 3. <u>Return of Company Property and Retrieval of Personal Effects</u>. You acknowledge that you will return to the Company as

of the Termination Date all property of the Company, including any keys, Company documents and files, and computer disks, code or files in your possession, custody or control.

19. The Letter Agreement signed by Sowers also provides in paragraph 5, in relevant part:

> 5. <u>Non-Disclosure, Confidentiality, and Cooperation.</u>
>
> (a) You acknowledge and agree that paragraphs 7 through 12 of the Employment and Confidentiality Agreement executed by you on June 16, 2004, attached at Exhibit D, remain in full force and effect and are incorporated herein by reference. You acknowledge and reaffirm that you remain bound by the terms and conditions of said provisions . . . .
>
> (c) You agree not to reveal or use any confidential information about the Company or any of its customers, officers, directors, attorneys, employees, or agents, or its operations or financial condition . . . .

Exhibit C, ¶ 5.

20. During the Transition Period, Sowers informed Numeric employees that he would be working with an offshore business that directly competes with Numeric and would have immediate use for Numeric's confidential databases, simulations and models. Sowers stated to Numeric employees Paul Taylor, Irwan The and Denis Suverov that Sowers would be working with Matthew van Vlack ("van Vlack"), a former Numeric employee who, upon information and belief, is currently employed by Maunatai Partners, a Hong Kong-based company providing investment advisory services comparable to services offered by Numeric. Van Vlack was a social friend of Sowers and both Sowers and van Vlack had attended University of Rochester. Between August and November 2004, Numeric clients contacted Mr. Furdak, Managing Director and Director of Numeric's International Strategies, and reported that Maunatai Partners had contacted Numeric clients to solicit their business.

### Sower's Theft, Transfer and Destruction of
### Numeric's Multi-Million Dollar, Confidential Files.

21.   Notwithstanding Sowers' repeated agreements to maintain Numeric's confidential material and return it upon his termination, on or about December 20, 2004, Numeric discovered that Sowers had collected Numeric-owned files relating to Sowers' work on Numeric databases, simulations and models, that Sowers had transferred confidential Numeric files to offsite Internet sites controlled by Sowers, and that Sowers had then, upon information and belief, deleted files from Numeric's computer systems.  In addition, on December 23, 2004, Numeric discovered that Sowers had raided other employees email accounts to retrieve emails for which he was not an authorized user.  Moreover, Sowers decision to begin work for an offshore company that directly competes with Numeric and his acts in sending Numeric-owned files to an Internet site in which, upon information and belief, van Vlack has access, makes it highly probable that Sowers' action were intended to cause Numeric confidential materials to a competitor and this will catastrophic damage to Numeric's business.

22.   Sowers accomplished his theft, transfer and deletion by navigating through Numeric's networked computer systems.  Numeric's Cambridge offices are equipped with networked computer systems used by Numeric employees to perform research using the Internet, develop Numeric computer databases, simulations and models as well as collaborate with other Numeric employees and communicate with Numeric clients through email.  Numeric computer systems are connected via an internal computer network to the Internet and to each other and various server computers that enable Numeric employees to share projects and files with each other.  Numeric employees each have varying degrees of access privileges to particular Numeric network directories, documents and files.  Numeric employees typically utilize storage space on a networked directory called "NOSNAP."  Numeric employees, including Sowers, typically

stored Numeric projects and files in the NOSNAP directory while they were under development and in order to share files with other Numeric employees. Numeric employees, including Sowers, are assigned a Numeric-owned laptop computer that are to be used for Numeric-related purposes when working from home or outside of the office.

23.     Prior to November 30, 2004, Sowers returned the laptop computer he was issued as part of his employment with Numeric, as he was required to do under the 2000 and 2004 Agreements as well as the Letter Agreement. At that time, Sowers indicated that there were technical problems with his laptop caused by his installation of software that had not been authorized by Numeric and requested that Numeric systems administrators assist him in recovering personal files stored on his laptop. When Numeric CFO, Mr. Joumas, agreed to Sowers' request for assistance, instead of seeking out the help of Numeric system administrators, Sowers took physical possession of the laptop computer on or about December 8, 2004. When this change of custody was discovered, Numeric employees immediately took possession the Numeric laptop assigned to Sowers.

24.     On December 20, 2004, Mr. Furdak attempted to find files relating to a Numeric project with which Sowers had been involved but was unable to locate the files at issue on Numeric's NOSNAP directory. Mr. Furdak then attempted to access Sowers' archived business email, only to discover that Numeric-owned Outlook email files and directories relating to Sowers had also been deleted. Sowers freely admitted to Numeric personnel that he deleted the Numeric-owned Outlook email files. These email files, like those corresponding to all Numeric employees, was at all times the property of Numeric and contained valuable communications between Sowers and other Numeric employees as well as Numeric clients.

25. On or around December 21, 2004, at Mr. Furdak's request, Numeric system administrators Horace E. Henderson, James Kelly and Paul Taylor performed an investigation into the disappearance of files. This investigation revealed that in December 2004, Sowers had collected 20 GBs of Numeric-owned files (*i.e.* over 75 CDs of data and millions of pages of documents), including, upon information and belief, the database of European data.

26. Numeric's investigation also revealed that in December 2004, Sowers compressed Numeric files that he had collected, including, upon information and belief, a highly confidential European database, and created archive or "gzip" files containing those confidential files that could be easily transferred to other computers.

27. A review of Numeric computers also revealed that on or about December 10, 2004, the same day Sowers executed the Letter Agreement described above, Sowers transferred the archive files he had created from Numeric confidential materials, including the highly sensitive European database files, to remote computer systems. Sowers transferred the Numeric files to an Internet site named "www.wookieeland.com" that was registered to Sowers in September 2004 and, upon information and belief, is maintained on a computer located at Sowers' residence. See Exhibit D. Sowers also transferred files from Numeric computer systems to an Internet site at "www.uofr.net," run by the University of Rochester Alumni Association, where Sowers currently maintains an email account. See Exhibit D.

28. On or about December 20, 2004, based upon Numeric's investigation, Numeric is informed and believe that Sowers deleted all of the Numeric confidential and proprietary information, documents, files and data, he had collected and transferred from Numeric's NOSNAP directory, approximately 20 GBs of data. During this time Sowers, upon information

and belief, also deleted the email account and all the stored business communications registered to him on Numeric's Outlook email system.

29. In light of Sowers' ultimate deletion of the archived files in the NOSNAP directory on Numeric's computer systems, the full extent of Sowers' unauthorized transfers is unknown. In addition to the Numeric-owned European databases, simulations and models that Sowers is known to have collected and transferred, it is also probable that Sowers transferred Numeric-owned Japanese databases, simulations and models that he played a role in developing. It is possible that Sowers transferred all of Numeric's other proprietary software, databases, simulations and models.

30. Sowers never requested permission to transfer files to computer systems outside of Numeric and Sowers never reported these transfers to Numeric employees.

31. Sowers has also never returned the Numeric confidential and proprietary information, documents, files and data, including the European database, that he transferred to external computer systems on or about December 10, 2004.

32. Numeric's investigation also revealed that Sowers had installed a program designed to circumvent password protection on Numeric-owned Microsoft Excel database files.

33. In the course of Numeric's investigation into these events, Numeric employees have expended over 40 personnel hours investigating Numeric's computer systems and backup tapes to identify Sowers unauthorized access and the files involved in his transfers, at a cost of over $11,000 to Numeric. In addition, because Sowers' conduct has only recently been discovered, additional efforts to recover and confirm the files that Sowers misappropriated and deleted are expected to top $10,000.

34. The services that Numeric provides its clients derives directly from the development and use of Numeric's confidential and proprietary databases, simulations and models. The transfer of these electronic files to Numeric's clients or competitors is highly likely to result in lost revenues between $10 and $100 million per year, in addition to providing competitors with a windfall of tens of millions of dollars of Numeric's development costs.

## COUNT I

### Violations of the Computer Fraud and Abuse Act, as amended by the USA PATRIOT Act of 2001 (18 U.S.C. § 1030)

35. Plaintiff incorporates the allegations in each of the foregoing paragraphs as if fully set forth herein.

36. Defendant's wrongful course of conduct, as set forth above, constitutes a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, because Defendant intentionally accessed a computer without authorization and/or exceeding authorized access, and thereby obtained information from a protected computer in a manner that involved an interstate or foreign communication.

37. Defendant's wrongful course of conduct, as set forth above, constitutes a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, because Defendant intentionally accessed a protected computer without authorization, and as a result of such conduct, caused damage and recklessly caused damage to Plaintiffs.

38. Defendant's conduct has caused damage to Plaintiff aggregating at least $5,000 in value during a one-year period and, pursuant to 18 U.S.C. § 1030, Plaintiff is entitled to such preliminary or other equitable or declaratory relief as may be appropriate and damages.

## COUNT II

### Violations of the Stored Communications Act (18 U.S.C. § 2701, *et seq.*)

39.  Plaintiff incorporates the allegations in each of the foregoing paragraphs as if fully set forth herein.

40.  Defendant's wrongful course of conduct, as set forth above, constitutes a violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2701, *et seq.*, because Defendant intentionally accessed without authorization and/or intentionally exceeded his authorization to access a facility through which an electronic communication service is provided and thereby obtained, altered or prevented authorized access to a wire or electronic communications while they were in electronic storage.

41.  Plaintiff has been and continues to be damaged by Defendant's conduct and, pursuant to 18 U.S.C. § 2707, Plaintiff is entitled to such preliminary or other equitable or declaratory relief as may be appropriate, actual damages to equal or exceed $1,000 in statutory damages, disgorgement of the profits Defendant has earned as a result of his illegal conduct, punitive damages, as well as costs and reasonable attorneys' fees.

## COUNT III

### Misappropriation of Trade Secrets, Confidential and Proprietary Information

42.  Plaintiff incorporates the allegations in each of the foregoing paragraphs as if fully set forth herein.

43.  Defendant has misappropriated confidential and proprietary business information and trade secrets owned by Plaintiff by improper means and in violation of a confidential relationship with Plaintiff.

44.   As a result of Defendant's actions as set forth above, Plaintiff has suffered and continues to suffer substantial, immediate and irreparable harm and damages. Plaintiff is entitled to actual and compensatory damages and equitable relief.

## COUNT IV

### Violation of M.G.L. Ch. 93 §§ 42 and 42A

45.   Plaintiff incorporates the allegations in each of the foregoing paragraphs as if fully set forth herein.

46.   Defendant has stolen, copied, and carried away confidential and proprietary information and trade secrets of Plaintiff with intent to disclose it and convert it to his own use.

47.   Defendant has misappropriated Plaintiff's confidential and proprietary information and trade secrets by improper means and in violation of a confidential relationship with Plaintiff.

48.   Defendant's misappropriation of Plaintiffs' confidential and proprietary information and trade secrets as set forth above constitutes a violation of M.G.L. ch. 93, §§ 42 and 42A.

49.   As a result of Defendant's actions as set forth above, Plaintiff has suffered and continues to suffer substantial, immediate and irreparable harm and damages. Plaintiff is entitled to actual and compensatory damages as well as up to double damages for Defendant's willful conduct and equitable relief.

## COUNT V

### Breach of Contract

50. Plaintiff incorporates the allegations in each of the foregoing paragraphs as if fully set forth herein.

51. By copying and retaining Numeric information, documents and files governed by the return provisions of the Agreement and the Letter Agreement, Sowers has breached said Agreement and Letter Agreement.

52. Numeric carefully safeguards its confidential information in order to protect its competitive position in the industry. As expressly set forth in the Agreement, Numeric's desire to protect such information is the reason that it requires employees such as Sowers to sign the Agreement as a condition of their employment by Numeric.

53. Sowers has intentionally, covertly, and without authorization, transferred confidential and proprietary information, documents and files to remote computer systems and is currently retaining these files after the termination of his employment with Numeric. Numeric justifiably fears that the documents in Sowers' possession are sensitive and that their disclosure to third parties would be irreparably damaging to Numeric.

54. In signing the Agreement and Letter Agreement, Sowers expressly admitted that any breach of its terms could cause Numeric irreparable harm and agreed that Numeric would be entitled to seek injunctive relief and monetary damages to enforce it. The Agreement states, in relevant part:

> I recognize that money damages alone would not adequately compensate the Company in the event of breach by me of this Agreement, and I therefore agree that, in addition to all other remedies available to the Company, at law, in equity or otherwise, the Company shall be entitled to injunctive relief for the enforcement hereof.

*Exhibit A, ¶ 13.*

## EQUITABLE AND LEGAL RELIEF

55.     Plaintiff incorporates the allegations in each of the foregoing paragraphs as if fully set forth herein.

56.     Defendant has in his possession Plaintiff's information, documents and files which, on their face, contain confidential, proprietary and highly sensitive business, financial and customer information belonging to Plaintiff. Defendant has covertly transferred files to remote personal computer systems on the eve of his departure. Defendant has also claimed that he intends to begin work for one of Plaintiff's direct, offshore competitors.

57.     Defendant has breached his agreements with Plaintiff, has made unauthorized use of Plaintiff's computer systems to misappropriate Plaintiff's trade secrets and has destroyed Plaintiff's confidential and proprietary files.

58.     There is substantial likelihood that Plaintiff will prevail on its claims of computer fraud and abuse, misappropriation of trade secrets and breach of contract.

59.     Plaintiff has no adequate remedy at law. Plaintiff will suffer immediate irreparable injury if, *inter alia*, the confidential and proprietary business, financial and model data contained in files in Sowers' possession are leaked into the marketplace. Such information will, in customers' or competitors' hands, adversely affect Plaintiff's ability to market and sell its services. Plaintiff's ability to compete will be irreparably harmed if the information known to be in Sowers' possession is disclosed. These injuries are, in part, not susceptible of being assessed monetarily with sufficient accuracy to permit their recovery in damages and, to the extent they are so assessable, are in the tens of millions of dollars and therefore greatly exceed the ability of Defendant to pay.

60.     Defendant will suffer no harm from having to surrender files belonging to a company that he no longer works for, that he has agreed to return and that he no longer has any

right to use. Greater injury will be inflicted upon Plaintiff by the denial of relief than will be inflicted upon Defendant by the granting of relief.

61. No harm will befall the public if an injunction prohibiting the described conduct is issued. Defendant's unlawful acts constitute serious violations of federal and state statutes and policies intended to prevent the theft of and distribution of trade secrets. An injunction will prevent the further dissemination of Plaintiff's trade secrets to Plaintiff's business rivals and, therefore, could prevent additional parties from becoming involved in the ongoing misappropriation and dissemination of Plaintiff's trade secrets. In consequence, an injunction will further ensure that Defendant's unlawful conduct does not further impact the public-at-large.

62. Unless a Temporary Restraining Order is issued, substantial and irreparable injury to Plaintiff's business, property and reputation will be unavoidable.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

1. Issue an Order immediately impounding, with the assistance of the United States Marshall Service, Sowers' home computer system(s) on which he maintains the "www.wookieeland.com" Internet site and/or any computer system(s), computer storage medium, documents, materials or files containing Numeric-owned information.

2. Issue a Temporary Restraining Order and Preliminary Injunction ordering Defendant Ryan H. Sowers, and his agents, servants, employees, representatives and all those in active concert with him or them or under his or their control, to immediately:

   a. Provide Numeric with a detailed and specific inventory of all materials, documents, files, information or data belonging to Numeric in Sowers'

       possession, custody or control, and identifying by name, address, telephone number and any computer contact information, to whom Sowers has disclosed any materials, documents, files, information or data belonging to Numeric;

   b. Return to Numeric all materials, documents, files, information or data belonging to Numeric;

   c. Until further Order of this Court, refrain from taking any action whatsoever, or causing any other person to take any action whatsoever, directly or indirectly, to disclose to any third party materials, documents, files, information or data belonging to Numeric; and

   d. Refrain from destroying any materials, documents, files, information or data belonging to Numeric in Sowers' possession, custody or control.

3. Enter judgment in favor of Plaintiff on each of its claims;

4. Award statutory, actual and compensatory damages for the unlawful acts and practices alleged herein in an amount to be determined at trial;

5. Award all monies and profits wrongfully obtained by Defendant as a result of the unlawful acts and practices alleged herein in an amount to be determined at trial;

6. Award multiple, exemplary and punitive damages to be determined at trial;

7. Award pre- and post-judgment interest as provided by statute;

8. Award Plaintiff's costs reasonably incurred in this action together with reasonable attorneys' fees incurred herein; and

9. Award such other relief as the Court deems just and proper.

                                    NUMERIC INVESTORS LLC,

                                    */s/ Gabriel M. Helmer*

                                    Michele A. Whitham  (BBO #553705)
                                    Gabriel M. Helmer (BBO #652640)
                                    FOLEY HOAG LLP
                                    155 Seaport Boulevard
                                    Boston, MA  02210
                                    (617) 832-1000

                                    ATTORNEYS FOR PLAINTIFF

Dated: December 23, 2004

## VERIFICATION

I, Robert E. Furdak, depose and say that I am Managing Director and Director of International Strategies for Numeric Investors LLC, that I have read the foregoing Complaint and that the statements of fact contained therein are true, except for those statements made on information and belief, and, as to those, I believe them to be true. This statement is made under the pains and penalties of perjury.

_____
Robert E. Furdak
Numeric Investors LLC
One Memorial Drive
Cambridge, Massachusetts 02142

Dated: December 23, 2004

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLERK'S NOTICE

This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.