FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

2005 MAR 17  P 3: 34

U.S. DISTRICT COURT
DISTRICT OF MASS.

NUMERIC INVESTORS, LLC,

Plaintiff,

v.

RYAN H. SOWERS,

Defendant.

CIVIL ACTION NO. 04-12692-RCL

## MEMORANDUM OF LAW IN SUPPORT OF ███████████████
## OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL THE PRODUCTION OF
## DOCUMENTS AND THINGS

By its Motion to Compel, the Plaintiff, Numeric Investors LLC ("Numeric"), has

advanced the position that ███████████████████ should be forced to relinquish

███ rights of privacy, and the privacy rights of ██████████████, so that Numeric can satisfy

its curiosity to "confirm" that ████████████████████████████████████████

████████████ in this matter.  To satisfy its curiosity, Numeric would have this Court compel

the production of ██████████ personal computers so that Numeric's computer consultant

can make "mirror" copies of the data on these PCs, which PCs contain attorney/client privileged

communications, private medical information about ████████'s family, ██████████

██████████████████████, private financial information including credit card

information, banking information, and passwords.  Moreover, Numeric also seeks to gain access

to a ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████.  Numeric seeks such information without presenting the Court with any

reliable information that ██████████s sworn testimony, by which █ denied receiving any

Numeric data from the Defendant, was misleading or inaccurate.

# **STATEMENT OF FACTS**[1]



---

[1] The facts stated herein are taken from the Affidavit of ███████████





## ARGUMENT AND AUTHORITIES

**I.**

Before allowing Numeric intrusion into an opposing party's information system, Numeric is required to present some reliable information that the opposing party's representations are misleading or substantively inaccurate.  Williams v. Massachusetts Mut. Life Ins. Co., 03-11470-MAP (Neiman, J.) (2005) (copy attached).  While Numeric has apparently satisfied its burden to show that Sowers removed proprietary Numeric data, it has utterly failed to do so regarding







II.





**III.**





IV.    **UNDER NO CIRCUMSTANCE SHOULD THE COURT COMPEL
PRODUCTION OF THE** ███████████.

███████████████████████████████

███████████████████████████████

███████████████████████████████████

████████████████████████████████████

█████████████████████████████

████████████████████████████████████

█████████████████████████████████████

██████████████████████████████████████

███████████████████████████

Numeric has utterly failed to provide this Court with a reason to allow it unfettered

access to █████████████████████████████████

█████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

**V.    THE REQUESTED DISCOVERY DOES SEEK DISCLOSURE OF CONFIDENTIAL, PROPRIETARY, AND PRIVILEGED INFORMATION AND HAS BEEN A BURDEN ON ████████.**

In a rather dismissive fashion, Numeric concludes that because it has retained an

"independent expert", all of █████████'s objections and concerns related to disclosure of ██

private, privileged, and confidential information have been rectified, or at least addressed.

Numeric makes no attempt to address ████████'s concerns about the attorney/client

privileged communications ██ has had with ██ counsel in this case that will be involuntarily

disclosed to the "expert" retained by Numeric if his PCs are searched. ██████████ is

unaware of the reputation, insurability, or competence of the computer consultant being paid by

12

Numeric. Certainly, the computer consultant is not a recognizable national company. According to the request of Numeric, all information and data on all of the PCs in ▮▮▮▮▮'s possession will now be in the possession of Numeric's computer consultant. Certainly, once this data involuntarily leaves ▮▮▮▮▮'s home, there is great ease with which such information can be copied or transferred. Virtually every week there is a story in the news about a reputable retailer, business or government agency which has inadvertently disclosed the private and confidential information, information such as social security numbers, credit card numbers, or medical records of innocent citizens. Once all of ▮▮▮▮▮'s personal, privileged and confidential information, and family medical records are in the possession of Numeric's consultant, such data could be easily, even if inadvertently, transferred, lost, or otherwise available to persons unknown to ▮▮▮▮▮.

Equally important, there was no attempt to Numeric to compromise or narrow the discovery dispute. Numeric's position was either ▮▮▮▮▮ allow access to all of the information on ▮▮▮▮▮'s PCs, or Numeric will get a court order compelling ▮▮▮▮▮ to do so. ▮▮▮▮▮'s inquiry as to whether the search could be conducted by a reputable national company, and that any such search be specifically limited to the time period at issue was dismissed without discussion. [Helmer Declaration, Ex. 29].

Numeric seeks to have its computer consultant make a "mirror image of ▮▮▮▮▮ computers and media . . ." so its computer consultant "may then perform a comprehensive search of the mirror images of ▮▮▮▮▮'s computers for relevant data without impacting the operation of ▮▮▮▮▮'s computers." Numeric then suggests that "the disclosure of any information regarding ▮▮▮▮▮ computers may be strictly limited to those files and communications relevant to this lawsuit." These two positions are irreconcilable.

13



According to the computer consultant hired by Numeric, there were, at most, ███████ ███████████████████████ Sowers transferred data from Numeric. Thus, assuming *arguendo* there was a legal basis justifying the search of ████████████ personal computers, such search would necessarily need to be specifically targeted to uncover Numeric proprietary information transferred from Sowers to ██████████████████████████ ██████████████████████████████████████ ████████████.

Numeric's refusal to limit its search for Numeric data, as opposed to a turnover and search of medical records, personal financial information, ████████ proprietary information, and attorney/client privileged communications, shows that Numeric seeks the disclosure of purely private and privileged information from ████████████████████ unrelated to a transfer of Numeric data from Sowers to ████████████████. As such, Numeric's Motion to Compel should be denied.

## VI.  NUMERIC HAS FAILED TO JUSTIFY ITS REQUESTED DISCLOSURE OF PRIVILEGED AND PROTECTED INFORMATION.

█████████████████████████████████████████████ all have statutory right of privacy. Mass. G.L. ch. 214, § 1B. In Massachusetts, every person has "a right against unreasonable, substantial, or serious interference with his privacy." Mass. G.L. ch. 214, § 1B. Numeric has failed to address how its broad requests recognizes this right of privacy. Numeric also seeks to have this Court compel ██████████████ to turnover communications with ███ lawyer, which are subject to the attorney/client privilege. The attorney/client privilege extents to all communications made to an attorney "for the purpose of facilitating the rendition of legal services." Purcell v. District Attorney for the Suffolk Dist., 424 Mass. 109, 115 (1997). Since ████████████ has established that the request made by Numeric

would place ▮ privileged communication with his counsel in the possession of a third party, ▮ absolutely objects to such a disclosure. Moreover, ▮ has established that Numeric's request would divulge private medical information related to ▮ , which are protected under Federal and Massachusetts law. See Health Insurance Portability and Accountability Act of 1996 (HIPAA) and 160 C.F.R. 164.508. Unless and until Numeric can provide a qualified exception to each and every privilege and privacy protection ▮ , Numeric should not be allowed complete and unfettered access to all such information on the PCs in his possession.

## CONCLUSION

For each and all of the aforementioned reasons, this Court should deny Numeric's Motion to Compel the Production of Documents and Things ▮

By ▮ Attorneys,
RIEMER & BRAUNSTEIN LLP

Dated: March 10, 2005

_Dennis E. McKenna (dr)_
Dennis E. McKenna, BBO # 556428
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts 02108
(617) 523-9000

## CERTIFICATE OF SERVICE

I, Dennis E. McKenna, hereby certify that on this 10th day of March, 2005, I caused a true and accurate copy of the foregoing document to be served by hand/first class mail, postage prepaid upon: Gabriel M. Helmer, Esquire, Foley Hoag LLP, 155 Seaport Boulevard, Boston, Massachusetts 02210; and Justine H. Brousseau, Esquire, Kimbell, Brousseau & Michon, LLP, One Washington Mall, Boston, Massachusetts 02108.

_Dennis E. McKenna (dr)_
Dennis E. McKenna

880438.1

15

05-003-05

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

ISAAC WILLIAMS, JR.,        )
             Plaintiff     )
                        )
                        )
          v.               )   Civil Action No. 03-11470-MAP
                        )
                        )
                        )
MASSACHUSETTS MUTUAL LIFE  )
INSURANCE COMPANY (a/k/a    )
MASSMUTUAL FINANCIAL GROUP)  )
and DAVID L. BABSON & COMPANY, )
INC. (a/k/a DAVID L. BABSON AND )
COMPANY),                )
          Defendants  )

## MEMORANDUM AND ORDER WITH REGARD TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND APPOINT A NEUTRAL EXPERT IN COMPUTER FORENSICS (Document No. 28)
### February 2, 2005

NEIMAN, U.S.M.J.

Presently before the court is Isaac Williams, Jr. ("Plaintiff")'s Motion to Compel

Discovery and Appoint a Neutral Expert in Computer Forensics. Plaintiff's motion is

based on his claim that Massachusetts Mutual Life Insurance Company ("MassMutual")

and Babson Capital Management (formerly David L. Babson & Company, Inc.)

("Babson") (collectively "Defendants") should produce a document that allegedly

reflects a practice and policy of MassMutual to use its performance review and

progressive discipline policies for purposes of discriminating against African-American

employees. For the reasons which follow, Plaintiff's motion will be denied in all

respects but one, the retention of certain data relevant to the present dispute, as further

7

specified below.

## I. BACKGROUND

The factual background to Plaintiff's motion is somewhat convoluted. In summary, Plaintiff, who is African-American, testified at his October 28, 2004 deposition that he had seen and had had in his possession a hard copy of an October 24, 2002 e-mail message sent by either Nancy Roberts, a senior vice president, or Stephanie Allsup to Robert O'Connell, MassMutual's Chief Executive Officer. That e-mail message, Plaintiff claims, "spelled out" a policy or practice by MassMutual of using disciplinary actions as a pretext for terminating minority employees. As proof of its existence, Plaintiff points to an April 29, 2003 memorandum-to-file prepared by his counsel based on handwritten notes of a telephone conversation that counsel had with Plaintiff, notes which have since been destroyed. In his memorandum-to-file, counsel describes "a memorandum (E-mail) dated October 24, 2002," which discusses the "online" nature of a new progressive discipline policy.

Plaintiff, it should be noted, neither identified the e-mail message in his Rule 26(a)(1) initial disclosures nor produced it in response to Defendants' document request. In any event, following Plaintiff's deposition, Defendants asked Plaintiff to produce a copy of the e-mail message. Plaintiff did not do so and has since represented, through counsel and by affidavit, that he cannot find the document. This representation was set forth in Plaintiff's Opposition (Document No. 27) to Defendants' Motion for Sanctions (Document No. 23) in which Defendants sought sanctions, including dismissal, for Plaintiff's failure to produce the e-mail message. The court

2

heard argument on December 29, 2004, and thereafter granted Defendants' motion for sanctions in part, ruling that Plaintiff would "be precluded from relying on the contents of [the] October 24, 2004 e-mail he has alleged was in his possession but had failed to produce to Defendants," this ruling being "without prejudice to [Plaintiff] seeking relief from the trial court once further discovery has been completed."

In the meantime, Plaintiff filed the instant motion in which he seeks to have the court appoint a "neutral" forensic computer expert to inspect Defendants' computer hard drives and/or electronics communication system in an attempt to recover the October 24, 2002 e-mail message which he claims exists. "Should the e-mail in question be recovered," Plaintiff avers, "an additional, more detailed electronic investigation [should] be undertaken to locate and retrieve all electronic communications related to his employment and termination that have not as yet been produced by defendants." In addition, Plaintiff requests that Defendants be ordered to "preserve all documents and information, whether in electronic or paper form, to suspend all recycling of any backup tapes, any automated deletion of e-mail, the reformatting of hard drives, and/or that an appropriate medium for retention of this type of data be disclosed and utilized."

Defendants oppose Plaintiff's motion. They assert that the motion is based on "flimsy and implausible assertions" and that the October 24, 2002 "e-mail" is most likely an October 24, 2002 memorandum from Ms. Roberts to Mr. O'Connell which has been produced to Plaintiff and which, in their estimation, does not describe any discriminatory practices. Moreover, Defendants assert that they have undertaken their

3

own forensic analysis which has failed to identify any e-mail message of the sort Plaintiff alleges he once had in his possession. (See Affidavit of Bruce Bonsall (Document No. 26).)[1]

In the court's view, Defendants have the better argument by far. In essence, Plaintiff seeks significant relief -- the search of Defendants' information systems -- based not only on uncorroborated evidence but, curiously, on a document which Plaintiff himself claims to have had in his possession but which he can no longer locate.

## II. DISCUSSION

As the parties are no doubt aware, e-mail messages and other electronically stored information are generally subject to document disclosure requirements under the Federal Rules of Civil Procedure. See Rowe Entm't, Inc. v. William Morris Agency, Inc., 205 F.R.D. 421, 428 (S.D.N.Y. 2002).[2] Here, however, the issue is more circumscribed, centering as it does on the production of one document whose very existence is in dispute.

As an initial matter, the court is not at all inclined to appoint, under its aegis, a "neutral expert" in computer forensics in order to help Plaintiff confirm what is at best highly speculative conjecture that the October 24, 2002 e-mail message which he claims exists is something other than the October 24, 2002 memorandum which

---

[1] In addition, Defendants seek expenses and attorney's fees they have incurred in opposing Plaintiff's motion.

[2] See also the recently proposed amendments to the Federal Rules of Civil Procedure promulgated by the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States (August 2004). As proposed, Rule 34(a) will be amended to include "electronically stored information."

4

Defendants have produced. The court communicated this view to the parties during the December 29, 2004 hearing and remains no less convinced after further examining the two decisions upon which Plaintiff now relies, *Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645 (D. Minn. 2002), and *Playboy Enters., Inc. v. Welles*, 60 F. Supp. 2d 1050 (S.D. Cal. 1999). In short, Plaintiff has presented no credible evidence that Defendants are unwilling to produce computer-generated documents, whether now or in the future, *see Antioch*, 210 F.R.D. at 653, or that Defendants have withheld relevant information, *see Playboy*, 60 F. Supp. 2d at 1051.

The court is similarly disinclined to allow Plaintiff to conduct the forensic study at his own expense. Before permitting such an intrusion into an opposing party's information system — particularly where, as here, that party has undertaken its own search and forensic analysis and has sworn to its accuracy — the inquiring party must present at least some reliable information that the opposing party's representations are misleading or substantively inaccurate. *See In re Air Crash Disaster at Detroit Metro. Airport*, 130 F.R.D. 641, 646 (E.D. Mich. 1989). *See also La Chemise Lacoste v. Alligator Co.*, 60 F.R.D. 164, 172 (D. Del. 1973) (refusing to compel production where defendant avers that it has produced all responsive documents in its possession). Here, Plaintiff has provided no reliable or competent information to show that Defendants' representations regarding the one "e-mail" are misleading or substantively inaccurate. *Compare Premier Homes & Land Corp. v. Cheswell, Inc.*, 240 F. Supp. 2d 97, 98 (D. Mass. 2002).

More to the point, Plaintiff's reliance on his counsel's April 29, 2003

5

memorandum-to-file provides little support for his claims. As the court noted during the December 29th hearing, the memorandum-to-file, which purports to reflect the contents of the e-mail message that Plaintiff is now unable to locate, contains no term or phrase that does not appear in the October 24, 2002 document which Defendants have produced. Put differently, the October 24th memorandum contains all of the quoted terms which appear in counsel's memorandum-to-file except, of course, the interpretation which Plaintiff seeks to give those terms.

Likewise, the affidavit of Plaintiff's wife, Valerie Williams, a former MassMutual employee, provides little reliable or competent evidence to support Plaintiff's claim that there is a different version of the October 24th document produced by Defendants. Rather, her representations further support the view that the e-mail message and the October 24th document are one and the same. To be sure, Ms. Williams, like Plaintiff, attests that counsel's memorandum-to-file "accurately reflects the substance of the e-mail of October 24, 2002 in question." But for all the reasons stated, this assertion brings us no closer to a need for a forensic analysis.[3]

The court, however, will order Defendants to preserve all documents, hard drives and e-mail boxes which were searched by their forensic expert in response to Plaintiff's motion. (See Bonsall Affidavit ¶ 3.) Such an order, in the court's estimation, is not unduly burdensome and is necessary, at a minimum, to preserve Plaintiff's appellate

---

[3] Ms. Williams also makes a very serious allegation about the "purging" of employee files. But, as Defendants argue, that allegation is so vague as to be unhelpful to the court. She has not identified by name the in-house attorney about whom she makes the allegation, any employee file that was purged, or any document containing so-called "risky comments" that she "got rid of."

6

rights.  *See Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 138 (2004) ("one seeking a preservation order [must] demonstrate that it is necessary and not unduly burdensome").  *Compare Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 433-34 (W.D. Pa. 2004) (setting forth three prolonged balancing test for issuance of preservation orders).

### III. CONCLUSION

For the reasons stated, Plaintiff's Motion for Computer Expert is DENIED, except insofar as Defendants are ORDERED to preserve all documents, hard drives and e-mail boxes which were searched by their forensic expert in response to the instant motion.  In addition, although the question is close, the court DENIES Defendants' request for expenses and attorney's fees.  The court trusts that this particular endeavor regarding discovery on Plaintiff's part, misguided as it may have been, will be short-lived.

IT IS SO ORDERED.

DATED: February 2, 2005

                              /s/ Kenneth P. Neiman
                              KENNETH P. NEIMAN
                              U.S. Magistrate Judge

7