UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NUMERIC INVESTORS LLC,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>RYAN H. SOWERS,<br><br>　　　　　　Defendant. | CIVIL ACTION No. 04-12692-RCL |

**PLAINTIFF NUMERIC INVESTORS LLC'S ASSENTED-TO MOTION
TO IMPOUND REPLY BRIEF**

Pursuant to Local Rule 7.2, this Court's Stipulated Limited Protective Order (Court Docket. No. 16) and Notice of Scheduling Conference and Additional Matters (Court Docket No. 12), Plaintiff Numeric Investors LLC ("Numeric") respectfully moves this Court to impound Numeric's Reply in Support of its Motion to Compel filed herewith.

As grounds therefore, Numeric states as follows:

1.　　On January 27, 2005, this Court allowed expedited discovery to proceed pursuant to the Parties' Emergency Joint Motion for Immediate Discovery Concerning the Transfer of Confidential Electronic Documents (Court Docket No. 13).

2.　　On February 3, 2005, this Court entered the Stipulated Limited Protective Order (Court Docket. No. 16) which allows the Parties to designate as Confidential that material which identifies individuals or information concerning the whereabouts of confidential Numeric files transferred outside of the Company by the Defendant in this case.

3.　　Numeric has designated the expedited discovery produced thus far in the case as Confidential pursuant to the Stipulated Limited Protective Order (Court Docket. No. 16) because

it identifies individuals, computer systems, and Internet accounts that may possess or contain highly sensitive Numeric information, files and data.

4. Numeric's Reply in Support of its Motion to Compel is directed to one such individual who Numeric reasonably believes is in possession of confidential Numeric materials. Numeric's Reply in Support of its Motion to Compel contains continual references to the identity of the individual who is the subject of discovery, as well as specific computers and Internet accounts that Numeric believes contain relevant evidence and information regarding the unauthorized transfers at issue in this matter. In addition, Exhibits C-E contain documents produced from the Third Party under the Stipulated Limited Protective Order and details of the Parties' confidential expedited discovery.

5. Public disclosure of the identity of the individual at issue, his or her computer systems and Internet accounts as well as the details of the Defendant's transfers and the Parties' investigation, through public access to Numeric's Reply and certain of the accompanying exhibits, presents a real opportunity for other parties to tamper with or obtain highly sensitive and valuable Numeric property, as detailed in the Parties' Emergency Joint Motion for Impoundment and Limited Protective Order (Court Docket No. 14).

6. Counsel for the Third Party and Defendant in this matter have indicated their assent to this motion.

7.   Under these circumstances, there is good cause to impound Numeric's Reply in Support of its Motion to Compel.

          Respectfully submitted,

          NUMERIC INVESTORS LLC,

          By its attorneys,

          /s/ Gabriel M. Helmer
          Michele A. Whitham (BBO No. 553705)
          Gabriel M. Helmer (BBO No. 652640)
          FOLEY HOAG LLP
          155 Seaport Blvd.
          Boston, MA 02210
          (617) 832-1000

          ATTORNEYS FOR PLAINTIFFS

Dated: March 17, 2005

### CERTIFICATION OF COUNSEL

Pursuant to Local Rule 7.1(A)(2), the undersigned certifies that counsel for NUMERIC INVESTORS attempted to confer with counsel for THIRD PARTY and RYAN H. SOWERS in a good faith attempt to resolve the issues raised in this motion and counsel indicated their assent.

/s/ Gabriel M. Helmer
Gabriel M. Helmer

### CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of March, 2005, I caused a true copy of the above document to be served upon counsel for the THIRD PARTY and counsel for RYAN H. SOWERS by mail.

/s/ Gabriel M. Helmer
Gabriel M. Helmer

UNITED STATES DISTRICT COURT **REDACTED**
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NUMERIC INVESTORS LLC,<br><br>Plaintiff,<br><br>v.<br><br>RYAN H. SOWERS,<br><br>Defendant. | CIVIL ACTION No. 04-12692 RCL<br><br>FILED UNDER SEAL<br>CONFIDENTIAL: RESTRICTED DISCLOSURE |

### REPLY IN SUPPORT OF NUMERIC INVESTORS LLC'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND THINGS FROM ▮▮▮▮▮

▮▮▮▮▮ Opposition to Plaintiff Numeric Investors LLC's Motion to Compel, filed on March 10, 2005, utterly misrepresents the legal standards under which this matter should be resolved. According to the Opposition, the Federal Rules do not permit discovery of ▮▮▮▮'s computers unless Numeric establishes, in advance of full disclosure, that ▮▮▮'s self-serving statements that no relevant discovery will be found are outright lies. This circular reasoning is not the law. Under the Federal Rules, the correct legal standard for evaluating the appropriateness of discovery requests is whether the request is reasonably likely to lead to the discovery of admissible evidence. Under this standard, Numeric has more than established that the requested discovery is appropriate. For the reasons set forth below and in Numeric's initial brief, Numeric respectfully requests that this Court grant Numeric's motion to permit inspection of ▮▮▮▮▮, subject to the appropriate protections that Numeric has repeatedly articulated.[1]

---

[1] Numeric will also shortly file a motion to compel discovery from ▮▮▮▮▮▮▮▮▮▮.

I. ▓▓▓▓ **Has Misrepresented The Legal Standard And, Under The Correct Standard, Should Be Compelled To Produce The Requested Discovery**

Pursuant to the controlling federal discovery rules, Numeric is entitled to discover those documents and things that, like the discovery requested in Numeric's Motion to Compel, are "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). In this case, ▓▓▓▓ does not dispute that the requested discovery seeks relevant materials. Instead, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓'s position amounts, in effect, to an argument that classical discovery practice, which permits parties as a matter of course to test oral testimony against the facts embodied in documents and things, somehow does not apply to ▓▓▓ In support of this argument ▓▓▓▓ relies solely upon a recent order in <u>Williams v. Massachusetts Mutual Life Ins. Co.</u>, Civil Action No. 03-11470 MAP, 2005 WL 273132 (D.Mass. Feb. 2, 2005). ▓▓▓▓'s reliance on this case is misplaced and ▓▓▓▓ should be required to produce the requested discovery, even under the standard articulated in <u>Williams</u>, for a number of reasons.

First, the <u>Williams</u> decision was a fact-specific case that does not in fact stand, as ▓▓▓▓ asserts, for the proposition that all an individual need to do to avoid the production and inspection of his or her computer systems is deny that any relevant material will be found. "Before permitting such an intrusion into an opposing party's information system -- **particularly where, as here, that party has undertaken its own search and forensic analysis and has sworn to its accuracy** -- the inquiring party must present at least some reliable information that the opposing party's representations are misleading or substantively inaccurate." <u>Williams</u>, 2005 WL 273132 at 5. In the <u>Williams</u> case, unlike the case at hand, the court was presented

-2-

with particularly persuasive evidence that further inspection was not justified because a full and complete professional review of the producing party's computer systems had <u>already</u> been performed:

- In response to Williams's request for the sought-after electronic file, the defendant engaged its own licensed computer security professional with extensive experience and who had performed numerous prior forensic investigations with industry-standard forensic software used by law enforcement and other professional security firms. <u>Exhibit A</u>, Affidavit of Bruce Bonsall ("Bonsall Aff.") at ¶¶1-2.

- The software tool used by the investigator in <u>Williams</u> could search all the information present on computers using a number of advanced search techniques to automatically review not just the files an educated layperson such as ▇ might find on the computer, but also any deleted files as well as the unallocated free space on the hard drive -- areas of computer storage that a layperson would be unable to search. <u>See</u> <u>Exhibit A</u>, Bonsall Aff. at ¶3; <u>Exhibit B</u>, EnCase Datasheet.

- The investigator's search involved a comprehensive search of the defendant's computer systems using an extensive list of words and search terms that would uncover a range of potentially relevant documents. <u>Exhibit A</u>, Bonsall Aff. at ¶¶3-4.



Here, unlike in <u>Williams</u>, ▇

▇ so unlike the search performed in the <u>Williams</u> case, that ▇ assertions with regard to the existence of relevant evidence on his computers are entitled to little, if any, weight. Unlike the investigator in <u>Williams</u>, there is no evidence before this Court that ▇ is a trained professional computer forensic expert with prior experience in such investigations. As is discussed in detail in Numeric's Motion to Compel (pp. 16-17), ▇

▇, without developing any particular search methodology. ▇

- 3 -



█.[2] See Numeric's Motion to Compel at 16. In this regard, █

In addition, unlike the Williams plaintiff, Numeric seeks an inspection for electronic files that can be objectively identified and, therefore, are reasonably likely to be discovered if they exist on █. In the Williams case, the plaintiffs sought inspection to locate a single document "whose very existence [was] in dispute" because the plaintiff's unsubstantiated assertions that the document had ever existed were "highly speculative conjecture." Williams, 2005 WL 273132 at 4. In contrast, █. In this respect, the requested production and inspection is more likely to lead to the discovery of actual Numeric property. In addition, the forensic examination can easily be

---

[2] Although █

designed to ferret out the relevant materials without disclosing to the parties ████
████████████████████████████████████████████.[3]

Moreover, as Numeric has presented in detail in its Motion to Compel, ████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████. On this basis alone, Numeric is entitled to the
requested discovery.

While ██████████████████████████████████████████
████████████████████████████████, there is evidence that this statement is
false. ██████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

---
[3] In this regard, Numeric notes that, in choosing ████████████████████████
████████████████████████████████. See Rowe Entertainment,
Inc. v. William Morris Agency, Inc., 205 F.R.D. 421, 428 (S.D.N.Y. 2002) ████████
████████████████████████████████.

- 5 -

[redacted], attempted to intentionally conceal such communications.

In view of these facts and circumstances, [redacted]

██████████████████████████████████████ has no such evidence, he should be compelled to produce the requested discovery.

II. ████████'s Asserted Privacy Concerns Do Not Bar The Requested Discovery and, In Any Event, Are Adequately Protected By The Proposed Protective Order

As an initial matter, ████████ has incorrectly asserted that the requested inspection is prohibited because of the presence of proprietary business information (Opp. at 12-14), the presence of attorney-client privileged communications (Opp. at 14), and alleged protection afforded by all federal and state privacy statutes, generally speaking, as well as Mass. Gen. Laws ch. 214, §1B and the Health Insurance Portability and Accountability Act of 1996 (HIPAA) (Opp. at 15).[4] It is widely recognized that even when relevant electronic documents are intermingled with irrelevant, private, confidential, proprietary and privileged materials, that production of such documents to computer experts subject to a reasonable protective order is sufficient to protect the producing party from unreasonable disclosure and any waiver of privilege. See Rowe Entertainment, Inc. v. William Morris Agency, Inc., 205 F.R.D. 421, 428 (S.D.N.Y. 2002) (finding "no justification for a blanket order precluding discovery of the defendants' e-mails on the ground that such discovery is unlikely to provide relevant information or will invade the privacy of non-parties") (cited approvingly by Williams, 2005 WL 273132 at 4).

Despite ████████'s parade of horribles, he has not identified any particular procedure in the Protective Order proposed in Numeric's Motion to Compel which is insufficient to protect

---

[4] To the extent that ████████ has referenced specific statutes to support his privacy interests, ██ claims are entirely inapposite. For instance, HIPAA operates to prevent disclosure of health information only by "covered entities" that include health care providers, healthcare clearing houses and health plans, but not individuals. See HHS publication at <<http://www.hhs.gov/ocr/privacysummary.pdf>>. HIPAA thus provides no barrier to ████████ production. Similarly, Mass. Gen. Laws ch. 214, §1B, does not bar any and all disclosure of private information. Indeed, it only prohibits "unreasonable, substantial or serious interference" with ████████ right of privacy. As is explained in detail infra, the requested disclosure pursuant to a protective order never amounts to such an interference.

███████ privacy interests. Instead, ███████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████.

Similarly, attempting to limit the relevant time period is a red herring. ██████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

proposed limits appear strategically designed to avoid particular disclosures, rather than reduce inconvenience.

████████████████████████████

██████████. Vance International, Inc., the forensic investigative firm retained as independent experts in this matter, is a publicly-held, reputable and professional organization that is more than capable of examining Van Vlack's data subject to the letter of this Court's limitations, notwithstanding ██████████ baseless and unjustified attempt to impugn their abilities. ███

███ erroneously states that "the computer consultant is not a recognizable national company" simply because ███████████ are "unaware of the reputation, insurability, or competence of the computer consultant." Opp. at 12-13. Notwithstanding ██████ strategic ignorance of computer forensic firms, Vance, a company with 20 years of experience and approximately 3,000 employees, is a nationally and internationally known security, investigative and computer forensic firm that has regularly provided services to 135 of the Fortune 500. See Exhibit F, Sikellis Aff. at ¶¶3, 6. Vance has also been retained by over 70 of the largest law firms in the United States, including several of the largest law firms in Boston. See Exhibit F, Sikellis Aff. at ¶6. With a clientele that includes the 2004 Bush-Cheney presidential campaign, the International Olympic Committee, Microsoft Founder Bill Gates, Nelson Mandela, and Governor Arnold Schwarzenegger, Vance is a well-established firm with a national and international reputation. See Exhibit F, Sikellis Aff. at ¶6

The Vance personnel primarily assigned to this matter include Robert N. Sikellis, Esq. and David Sun, CISSP, both of whom have extensive training and experience in forensic computer investigations. See Exhibit F, Sikellis Aff. at ¶¶1-2, 8. Mr. Sikellis, a licensed attorney and former prosecutor, is the former Chief Director of the Massachusetts Attorney General's Special Investigations Division, where he launched the High Technology Crime Unit, one of the first of its kind in the country. See Exhibit F, Sikellis Aff. at ¶2. Mr. Sun who is an expert computer analyst, has been certified by the Certified Information Systems Security Professionals (CISSP)[5], is a licensed private investigator, a trained network engineer, as well as the former Manager for Emerging Technology Evaluation at UUNET, one of the world's largest

---

[5] CISSP is a certification reflecting the qualifications of information systems security practitioners. The trained investigator who performed the forensic analysis in the Williams case was also CISSP certified. See Exhibit A, Bonsall Aff. at ¶ 1.

Internet service providers. See Exhibit F, Sikellis Aff. at ¶8. Moreover, Vance is a wholly-owned subsidiary of SPX Corporation, which is a Fortune 500 company traded on the New York Stock Exchange with reported annual revenues in 2004 of over $4 Billion and over 25,000 employees world wide. See Exhibit F, Sikellis Aff. at ¶9. As a matter of sound business practice, Vance has invested in significant liability insurance, the limit of which, while not publicly available information, is well in excess of $10 million. Exhibit F, Sikellis Aff. at ¶10. In this respect, Vance's accountability likely far exceeds the value of MaunaKai, a recent start-up company with no current clients or investors. In this respect, Van Vlack's vague claims that Vance is not sufficiently competent, reputable or accountable are clearly a smokescreen.

Notwithstanding the protections already accorded by an independent forensic review of his computers and the Stipulated Limited Protective Order entered in this case, in view of ▮ ▮ general concerns, Numeric has *sua sponte* revised the Protective Order proposed in its Motion to Compel to provide even stronger and more defined limits to the requested discovery. See Exhibit G. In particular, Numeric has revised the Protective Order to make clear that any review of documents and files by the Independent Experts does not constitute a waiver of privilege or any of the other legal rights ▮ asserted. Exhibit G, at ¶2(i). In addition, the revised Protective Order provides a dispute resolution phase, during which time, documents deemed relevant by Numeric shall remain attorney's-eyes-only until ▮ objections to the disclosure of particular files are resolved. Id. In consequence, the Protective Order is more than sufficient to justify the production and inspection of the requested discovery.

## CONCLUSION

For the reasons discussed above and in Numeric's Motion to Compel, Numeric respectfully requests that this Court grant Numeric's motion, subject to the appropriate limitations of the Protective Order attached hereto as Exhibit G.

> Respectfully submitted,
>
> NUMERIC INVESTORS LLC,
>
> By its attorneys,
>
> _/s/ Gabriel M. Helmer_
> Michele A. Whitham (BBO No. 553705)
> Gabriel M. Helmer (BBO No. 652640)
> FOLEY HOAG LLP
> 155 Seaport Blvd.
> Boston, MA 02210
> (617) 832-1000
>
> ATTORNEYS FOR PLAINTIFFS

Dated: March 17, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of March, 2005, I caused a true copy of the above document to be served upon counsel for ▬▬▬▬▬▬▬▬▬▬ and counsel for RYAN H. SOWERS by mail.

_/s/ Gabriel M. Helmer_
Gabriel M. Helmer